O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re the Estate of WILLIAM D. GALBRAITH, <br><br> Plaintiff, <br><br> v. <br><br> TERI A. GALBRAITH, et al., <br><br> Defendants. | Case No. EDCV 09-00981-VAP (Ex) <br><br> **[Motion filed on February 10, 2010]** <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION TO THE SUPERIOR COURT** |

In December 2006, shortly after his marriage to Teri Galbraith was dissolved legally, William D. Galbraith ("Decedent") committed suicide. At the time of his death, Ms. Galbraith was still named as Decedent's beneficiary under his various benefit plans. Defendants Board of Trustees of the California Ironworkers Field Welfare Plan, California and Vicinity Field Ironworkers Annuity Trust, California Ironworkers Field Pension Trust, and Ironworkers Employees' Benefit Corporation (collectively, the "Ironworker Defendants") paid the benefits to which Decedent was entitled under his

respective benefit plans to Ms. Galbraith. Plaintiff Estate of William D. Galbraith ("Plaintiff"), represented by Decedent's father, William P. Galbraith, filed this action against Ms. Galbraith and the Ironworker Defendants alleging that the payment of benefits to Ms. Galbraith was wrongful. The Ironworker Defendants now seek summary judgment of the claims against them. Having reviewed and considered all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing on the Motion, the Court GRANTS the motion for summary judgment.

## I. BACKGROUND

**A. Uncontroverted Facts**

The following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for purposes of this Motion. See Local Rule 56-3.

Decedent and Ms. Galbraith apparently were married in 1999.[1] They divorced in 2006; a dissolution judgment was entered on September 6, 2006 which stated that the

---

[1] Neither side presents any evidence addressing basic background information concerning the Galbraiths' marriage, such as when they were married. The Ironworker Defendants, however, assert they were married "in or around August, 1999." (Mot. at 6:9-11.) As Plaintiff does not appear to dispute this fact, which does not affect the merits of this Motion, the Court will treat it as uncontroverted for purposes of this Motion.

2

marriage ended on December 13, 2006.  (Stmt. of Uncontroverted Facts ("SUF") ¶ 2.)[2]  Incorporated into the Galbraiths' dissolution judgment was a "Marital Settlement Agreement" ("the Agreement") dated June 10, 2006.  (SUF ¶ 3.)[3]  The Agreement contained conflicting provisions pertaining to Ms. Galbraith's continuing interest in her ex-husband's trust plans benefits in which Ms. Galbraith appeared simultaneously to relinquish and reserve those interests.  (See Decl. of Garee T. Gasperian ("Gasperian Decl.") Ex. N § 4.)

Decedent died on December 30, 2006, taking his own life.  (SUF ¶ 7.)[4]   At the time of his death, Decedent was a participant in three retirement plans: the

---

[2] Though Plaintiff purports to "dispute" this fact, it fails to controvert it.  Plaintiff asserts that "[t]he settlement agreement was the result of misrepresentation, fraud, or deceit, and the actions of defendant, Teri Galbraith were tortuous [sic]."  (Stmt. of Genuine Issues ("SGI") ¶ 2.)  Plaintiff does not dispute that such an order was entered on September 6, 2006, however, or that it provided that the marriage would end on December 13, 2006.  Accordingly, Plaintiff fails to controvert this fact.

[3] Plaintiff again purports to "dispute" this fact, and again fails to controvert it.  Plaintiff does not deny that the Agreement existed or was incorporated into the dissolution judgment, but rather maintains that the Agreement was the result of fraud.  (SGI ¶ 3.)  These arguments, even if successful, would do not controvert either the existence of the Agreement or its incorporation into the dissolution judgment.

[4] Although Plaintiff purports to "dispute" this fact, it concedes that Decedent did, in fact, commit suicide. (See SGI ¶ 7.)  Plaintiff's efforts to blame Ms. Galbraith for Decedent's suicide do not controvert this fact.

3

California and Vicinity Field Iron Workers Annuity Fund, the California Ironworkers Field Pension Trust, and the California Ironworkers Field Welfare Plan (the "Plans").[5] (Loot Decl. ¶ 6, Exs. K, L, M.) Decedent named Ms. Galbraith as beneficiary of the Plans on February 6, 2000. (Loot Decl. Ex A.)[6] There is no evidence that Decedent changed the named beneficiary for any Plan before his death. Each of the Plans provides a procedure for review and appeal of a decision made by the administrator of the plan. (See Loot Decl. Exs. K at § 10, L at § 4, M at 40-43.)

In early January, 2007, Ms. Galbraith notified the Ironworker Defendants of Decedent's death. (SUF ¶ 9; SGI ¶ 9.) On January 10, 2007, the Ironworker Defendants sent a letter to Ms. Galbraith informing her that she was

---

[5] Both sides fail to provide basic background facts concerning Decedent's career before his apparent retirement and the manner in which he came to be a participant in the Plans, such as for whom he was employed, how long he worked, whether or when he retired, and whether or not he was a union member

[6] Plaintiff argues that the signature of Decedent appearing on this document is a forgery. (SGI ¶ 8.) The only evidence on which Plaintiff relies in support of this argument, however, is the Declaration of Jeanette Galbraith, in which Jeanette Galbraith testifies that "the signature of the beneficiary designation may not be the handwriting or signature of my father, William D. Galbraith." (Decl. of Jeanette Galbraith ¶ 16 [emphasis added].) This merely amounts to a statement that Jeanette Galbraith lacks knowledge whether or not the signature is that of her father; it fails to raise a genuine issue of fact as to the authenticity of this document.

4

the last named beneficiary of Decedent and eligible to receive benefits from the Plans in the sum of $169,400. (SUF ¶ 10.)[7]

On January 31, 2007, Plaintiff's counsel sent a letter to the Ironworker Defendants requesting that the Ironworker Defendants not distribute funds from the Plans to Ms. Galbraith pending a "final order" from the probate court concerning the appropriate beneficiaries under the Plans. (Loot Decl. Ex. D.) The Ironworker Defendants replied to Plaintiff's counsel by letter dated February 2, 2006 informing him that Decedent's named beneficiary — i.e., Ms. Galbraith — was entitled to any funds provided for in the Plans. (Loot Decl. Ex. G.)

On February 4, 2007, the Ironworker Defendants and Plaintiff's counsel had a conversation in which the Ironworker Defendants agreed to delay distribution of the funds to Ms. Galbraith for thirty days.[8]

---

[7] Again, Plaintiff purports to dispute this fact, but fails to controvert it. (SGI ¶ 10.) Plaintiff offers no evidence showing that such a letter was not sent.

[8] The only evidence of this agreement is a February 5, 2007 letter from Plaintiff's counsel to the Ironworker Defendants referencing the conversation and agreement. (Loot Decl. Ex. H.) The Ironworker Defendants do not appear to dispute the existence of this conversation and agreement, however. (See SUF ¶ 18 ["The Ironworkers communicated to [Plaintiff's counsel] that they would wait 30 days before making the distribution of benefits to Ms. Galbraith."].)

5

On March 8, 2007, the probate court appointed Decedent's father as a representative for the estate. (See Gasperian Decl. Ex. S at 83.)  On March 15, 2007, the Ironworker Defendants distributed $15,000.00 in Plan funds to Ms. Galbraith, and on March 29, 2007, the Ironworker Defendants distributed the balance of the Plan funds to Ms. Galbraith.  (Loot Decl. Ex. J.)

**B.   Procedural Background**

Plaintiff filed its original Complaint in the California Superior Court for the County of Riverside on April 27, 2009.  The Ironworker Defendants removed the action to this Court on May 21, 2009.

Plaintiff filed a First Amended Complaint on June 9, 2009, asserting claims for (1) breach of fiduciary duty; (2) fraud; (3) civil conspiracy; (4) conversion; (5) breach of contract and of the covenant of good faith and fair dealing; (6) breach of written plan agreement; and (7) breach of fiduciary duty.  Plaintiff asserts only the sixth and seventh claims for relief against the Ironworker Defendants.  The remaining claims name only Ms. Galbraith as a defendant.

The Ironworker Defendants filed this Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (the "Motion") on February 10, 2010.

1 Plaintiff's Opposition and Defendants' Reply were filed
2 timely.
3
4 **C.   Evidentiary Objections**
5 The Ironworker Defendants object to portions of the
6 Declarations of Thomas Galbraith, Jeanette Galbraith,
7 William P. Galbraith, and John T. Hranek.  As discussed
8 below, however, the Court does not rely on any of these
9 declarations in considering the Motion.  Accordingly,
10 these objections are moot.
11
12 **D.   Plaintiff's Request for Judicial Notice**
13 In support of its Opposition, Plaintiff filed a
14 request for judicial notice (the "Request") in which
15 Plaintiff apparently requests that the Court take
16 judicial notice of the documents attached to the
17 Declaration of John T. Hranek (the "Hranek Declaration"),
18 Plaintiff's counsel, also filed in support of its
19 Opposition.[9]  Plaintiff makes no effort to explain,
20 however, how any of these documents are capable of
21 accurate and ready determination by resort to sources
22 whose accuracy cannot reasonably be questioned.  See Fed.
23
24 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
25    [9]The Court must infer that these are the documents to which Plaintiff refers because Plaintiff's counsel makes
26 no reference to his own declaration in the request for judicial notice, nor does he attach the documents of
27 which he requests notice be taken.  The documents referenced in the Request appear to correspond to those
28 attached to Mr. Hranek's declaration, however.

7

R. Evid. 201(b).  Accordingly, Plaintiff's Request is DENIED.

Furthermore, to the extent Plaintiff seeks to admit these documents into evidence through the Hranek Declaration, this effort also fails in large part.  A declaration of an attorney who lacks personal knowledge of a document is inadequate to authenticate the document properly.  See Orr v. Bank of America, 285 F.3d 764, 777 (9th Cir. 2002).  The only documents attached to Mr. Hranek's declaration of which it appears he has personal knowledge are Exhibits D, G, H, O, P, Q, R, T, EE, FF, MM, and NN.  The Court does not consider the remainder of the exhibits to the Hranek Declaration, except to the extent they are duplicates of documents submitted by Defendants and properly authenticated.  See id. at 776 ("[W]hen a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties.").

## II.   LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one

reasonable conclusion as to the verdict." <u>Anderson</u>, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998); <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. <u>Id.</u> The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477

U.S. at 252. <u>See</u> <u>also</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 14:144.

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Electrical Serv. Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III. DISCUSSION

Plaintiff's only two claims against the Ironworker Defendants are ones for breach of written plan agreement and breach of fiduciary duty. Plaintiff's claim for breach of fiduciary duty appears to be based in state law.[10] Generally, ERISA preempts state laws relating to employee benefit plans, however. <u>See</u> <u>Johnson v.</u>

---

[10] ERISA itself provides a claim for breach of fiduciary duty. <u>See</u> 29 U.S.C. §§ 1109, 1132(a)(2). In a claim for breach of fiduciary duty under ERISA, however, recovery inures to the benefit of the plan as a whole, and not to an individual beneficiary. <u>Paulsen v. CNF Inc.</u>, 559 F.3d 1061, 1073 (9th Cir. 2009). As Plaintiff seeks recovery on behalf of itself, and not the Plans, and does not reference ERISA in his breach of fiduciary duty claim, it does not appear that his claim for breach of fiduciary duty is based on ERISA.

10

Courturier, 572 F.3d 1067, 1078 (9th Cir. 2009) ("ERISA contains a broad preemption clause, such that with only limited exceptions it 'supersedes any and all State laws insofar as they . . . relate to any employee benefit plan.'") (quoting 29 U.S.C. § 1144(a)).  Accordingly, the Court construes Plaintiff's claims against the Ironworker Defendants as a single claim to recover benefits due under the terms of the Plans under 29 U.S.C. § 1132(a)(1)(B).

    The Ironworker Defendants argue that summary judgment is appropriate as to these claims because (1) Plaintiff failed to exhaust its administrative remedies before filing suit; (2) distribution of Decedent's benefits to the named beneficiary was appropriate as a matter of law; and (3) Plaintiff's claims "are barred by the doctrine of estoppel."  As the Court concludes that Plaintiff failed to exhaust its administrative remedies, it does not reach the Ironworker Defendants' alternative arguments.

    "ERISA itself does not require a participant or beneficiary to exhaust administrative remedies in order to bring an action under § 502 of ERISA . . . However, based on both the text of ERISA and its legislative history, [the Ninth Circuit] long ago concluded that 'federal courts have authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of

sound policy they should usually do so." <u>Vaught v. Scottsdale Healthcare Corp. Health Plan</u>, 546 F.3d 620, 626 (9th Cir. 2008).[11] There are limited exceptions to this exhaustion requirement, including instances where "resort to the administrative route is futile or the remedy inadequate," <u>id.</u> at 626-27, or "where a plan fails to establish or follow 'reasonable' claims procedures as required by ERISA." <u>Id.</u> at 627; <u>see</u> <u>also</u> 29 C.F.R. § 2560.503-1(*l*).

It is uncontroverted that each of the Plans contains procedures through which a participant or beneficiary may contest a claim decision, and that Plaintiff made no effort to avail itself of these procedures before filing this action. There is thus no genuine issue of fact as to whether Plaintiff exhausted its administrative remedies before filing this action – it did not. The only question before the Court therefore is whether or not one of the exceptions to the exhaustion requirement applies here.

Plaintiff argues that it was not obligated to exhaust its administrative remedies before filing suit because it "could not file a claim or an appeal because they [sic] had no standing to do so." (Opp'n at 12:6-7.) The Court

---

[11] Plaintiff does not dispute that ERISA applies to the Plans.

12

construes this as an argument that exhaustion should be excused because the available remedy was inadequate — i.e., by the time an administrator was able to act on behalf of the estate, the benefits had been distributed and the Ironworker Defendants were powerless to provide Plaintiff the relief sought.  Plaintiff apparently maintains that it had no standing because no administrator had yet been appointed to act on behalf of Decedent's estate at the time Ms. Galbraith received the benefits.  (Id. at 7-8.)  Plaintiff concedes, however, that the Ironworker Defendants did not distribute the benefits to Ms. Galbraith until after an administrator had been appointed for the estate.  (Id. at 7-10 ["Shortly after his appointment . . . the Ironworkers paid out the trust fund benefits to Ms. Galbraith."].)  Plaintiff objects that the Ironworker Defendants did so "during the time Plaintiff had requested a 30 day delay in the payment of trust fund benefits."  (Opp'n at 8-10.)

     This argument fails.  Plaintiff has offered no evidence that the distribution occurred during the thirty day period to which the Ironworker Defendants agreed.  It appears that on February 4, 2007, the Ironworker Defendants agreed to delay distribution of the funds for thirty days. (See SGI ¶ 18; Loot Decl. Ex. H.)  This thirty day period ended March 6, 2007.  The Ironworker Defendants did not distribute any funds until March 15,

13

2007, and did not complete distribution until March 29, 2007.

Plaintiff argues that the Ironworker Defendants agreed to delay payment of funds for an additional thirty days beyond March 8, 2007. (See Opp'n at 8-10; SGI ¶ 18.) Plaintiff cites no evidence supporting this assertion, however. The only evidence on which Plaintiff relies in support of this argument is a February 5, 2007 letter from Plaintiff's counsel to Erica Munoz, the Ironworker Defendants' employee. (See Loot Decl. Ex. H.) This letter, however, only shows that Plaintiff's counsel <u>requested</u> an additional thirty day delay beyond March 8, 2007. (See id. ["[We are <u>requesting</u> an additional thirty days beyond [March 8, 2007] . . . <u>Please</u> <u>confirm</u> that we will have an additional 30 days beyond March 8, 2007 before Trust funds are distributed."].) Although Plaintiff's counsel indicates in that letter that the Ironworker Defendants were willing to consider such a request, Plaintiff presents no evidence that the Ironworker Defendants ever actually agreed to this request. The Ironworker Defendants, of course, were under no obligation to delay payment of funds merely because of Plaintiff's counsel's request.

14

Here, an administrator was appointed a full week before the Ironworker Defendants distributed the benefits. (See Gasperian Decl. Ex. S at 83.) Accordingly, Plaintiff was not powerless to seek pre-distribution review of the Ironworker Defendants' claim determination through available dispute procedures. Plaintiff had adequate time after appointment of an estate administrator to dispute the Ironworker Defendants' claim determination yet failed to do so. An adequate administrative remedy was available which Plaintiff failed to exhaust. Plaintiff fails to show that any exception to the exhaustion requirement applies here.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Ironworker Defendants' Motion and DISMISSES Plaintiff's sixth and seventh claims for relief. Furthermore, the only remaining claims against Ms. Galbraith are based in state law. The Court declines to exercise jurisdiction over these claims, see 28 U.S.C. § 1367(c), and REMANDS this action to the California Superior Court for the County of Riverside.

Dated: May 26, 2010

                                    VIRGINIA A. PHILLIPS
                              United States District Judge